STATE OF NORTH CAROLINA v. EARL "BUBBA" WALLACE

No. 7719SC1012

(Filed 18 April 1978)

1. **Criminal Law § 90.1— State's introduction of defendant's exculpatory statements**

     The State is not bound by the exculpatory portions of a confession which it introduces if there is other evidence which tends to throw a different light on the homicide.

2. **Homicide § 21.8— second degree murder—State's introduction of defendant's exculpatory statement**

     The evidence was sufficient to be submitted to the jury in a second degree murder case where the State introduced defendant's statement to an officer that he stabbed deceased with a knife after deceased attacked him with a stick; the State introduced further evidence that defendant left the scene of the killing promptly after it occurred, that when he was arrested a short time later there were no marks on his body to corroborate his statement that deceased had struck him with a stick, and that a prompt search of the area failed to reveal the presence of a stick; and the nature of the wound defendant inflicted on deceased was such as to give rise to a permissible inference that excessive force was used.

APPEAL by defendant from *Collier, Judge.* Judgment entered 9 August 1977 in Superior Court, CABARRUS County. Heard in the Court of Appeals 4 April 1978.

Defendant was indicted for the first degree murder of Howard Richard Ford. The State elected to try defendant for second degree murder or any lesser included offense. He pled not guilty.

The State presented evidence to show that Ford died as result of a stab wound in the chest, and presented the testimony of a police officer that defendant admitted he inflicted the wound after Ford had hit him with a stick. Defendant testified at the trial that he stabbed Ford in the chest with his pocket knife, but testified that he did so only after Ford had committed an unprovoked assault on him and had struck him three times on the head with a stick. Defendant testified:

I cut him with the knife one time. I was not trying to kill the man. I was trying to get him away from me.

*       *       *

. . . When I stabbed him, I meant to fight my way out of that stick hitting. I guess I intended to stab him in the chest with this knife. . . .

\*     \*     \*

I intended to stick the knife in him anywhere because he was whupping me. He was hurting me. He liked to have buckled me to my knees.

There was evidence that prior to the fight defendant and Ford had been life-long friends, that at the time of his death Ford had .19 percent of alcohol in his blood, and that defendant had been drinking. The stabbing occurred about four o'clock on the afternoon of 7 May 1976 in the yard of the Jim Little house, a house which had "a reputation in the community as being a bootlegger house." Defendant was arrested about 4:15 on the same afternoon on the street near his home, which was about five to seven blocks from the place where the stabbing occurred.

There was also evidence that when defendant was arrested shortly after the killing, the officers did not observe any cuts or bruises on or about his body or face. The officers searched for but were unable to find the stick with which defendant said Ford had struck him. There were no eyewitnesses to the stabbing.

The jury found defendant guilty of voluntary manslaughter. From judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten by Associate Attorney Douglas A. Johnston for the State.*

*Koontz, Horton & Hawkins by Clarence E. Horton, Jr., for defendant appellant.*

PARKER, Judge.

Appellant raises but one question on this appeal, whether the evidence was sufficient to take the case to the jury. Citing *State v. Johnson*, 261 N.C. 727, 136 S.E. 2d 84 (1964), he contends that the State's evidence and his own evidence is to the same effect and that all of the evidence tends to exculpate him. From this, he argues that his motions for dismissal should have been allowed. We do not agree.

*State v. Johnson, supra,* is easily distinguishable on its facts. In that case, a murder prosecution, the State's only evidence that defendant committed the homicide was a confession which established a perfect self-defense. Circumstantial evidence corroborated this, and defendant's evidence at trial was to the same effect. Thus, in that case there was no evidence which tended to contradict or impeach the exculpatory portion of defendant's confession or her testimony at trial that she acted lawfully in self-defense.

[1, 2]  The facts of the present case are quite different and bring this case within the rule that the State is not bound by the exculpatory portions of a confession which it introduces if there is other evidence which tends to throw a different light on the homicide. *See State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds, Hankerson v. North Carolina,* 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977). In the present case there was such evidence. There was evidence that defendant left the scene of the killing promptly after the homicide, that when he was arrested a short time later there were no marks on his body to corroborate his statement that the deceased had hit him on the head with a stick, and that a prompt search of the area failed to reveal the presence of the stick. Finally, even if the deceased had assaulted defendant in the manner described by defendant, the nature of the wound which defendant admitted he inflicted on the deceased is such as to give rise to a permissible inference that excessive force was used. In view of all of the evidence, we hold that the case was one for the jury. Since no exception was taken to the court's charge to the jury, it is presumed that the case was submitted to the jury under proper instructions.

No error.

Judges VAUGHN and WEBB concur.